SO ORDERED: March 29, 2013.



Robyn L. Moberly
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| IAN JOHNSTON ) | CASE NO. 11-3242-RLM-11 |
| ) | |
| Debtor ) | |

**ORDER ON DEBTOR'S OBJECTION TO PROOF OF CLAIM FILED BY SUSAN BURNS**

This matter came before the Court on January 22, 2013 and again on March 13, 2013 upon the Debtor's objection to the proof of claim filed by creditor Susan Burns (the "Objection").

*Background*

Susan and the Debtor, Ian Johnston ("Ian"), were married in 1999. They separated in 2006 and their divorce was final in 2007. At the time of the divorce, Susan and Ian owned a condominium located in Fort Myers Beach, Florida (the "Condo"). Paragraph 4(b) of the marital settlement agreement approved on September 6, 2007

1

(the "Settlement Agreement") provided in part that the Condo was to be listed for sale and sold in a commercially reasonable manner. Ian was to pay the Condo expenses pending sale, including the monthly mortgage payments to Busey Bank and Monroe Bank, taxes, insurance, association fees, assessments or other such Condo expenses (the "Condo Expenses"). Susan was to receive 60% and the Debtor was to receive 40% of any sale proceeds remaining after satisfaction of the Busey Bank and Monroe Bank mortgages (the "Mortgages"). If the sale proceeds were not sufficient to pay the Mortgages, 40% of the balance due on the Mortgages would be paid by Susan and 60% would be paid by Ian.

Paragraph 7 of the Settlement Agreement provided that Susan and Ian were to maintain their individual retirement accounts and pension plans except that Susan was to transfer to Ian $100,000 from her AXA Equitable account and that Ian was to pay any fee she incurred as a result of the transfer. The provision that required Susan to transfer $100,000 was later deleted by agreed modification of the Settlement Agreement on January 29, 2008, with no explanation, and therefore Susan was not required to transfer those funds. Paragraph 12 of the Settlement Agreement provided that Ian, beginning March 1, 2008, was to pay Susan $2,000 a month for sixty (60) months. There is no dispute that Ian is current on these monthly payments.

Ian filed his chapter 11 case on March 23, 2011. The Condo sold in July, 2011 for $480,000 which did not cover the balances due on the Mortgages. The loss on the sale of Condo was attributable not only to the depressed real estate market but also because Busey Bank had paid some of the Condo Expenses that Ian had failed to pay pursuant to the Settlement Agreement. Ian's chapter 11 plan was confirmed on March

2

8, 2012.  The confirmed plan classified Susan's claim as unsecured, "from a property settlement arising from the Marital Settlement Agreement..." and that Ian would pay Susan pursuant to the terms and conditions of that agreement.

Susan filed a proof of claim on February 24, 2012 in the amount of $23,313.18. Susan also filed an application for reimbursement of administrative expense (the "Administrative Claim Application") claiming that she incurred post petition expenses of $91,667.30 which Ian should have paid under the Settlement Agreement and that such expenses should be given administrative priority. By separate order, this Court has determined that those expenses are not entitled to administrative authority but that order did not determine the amount of Susan's claim.

### *Discussion*

A claim filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity and amount of the claim pursuant to Fed. R. Bankr. P. 3001(f).  If the party objecting to the claim carries its burden of rebutting that presumption and presents evidence to put the claim into question, the burden shifts back to the claimant to establish its claim.  *In re Olde Prairie Block Owner, LLC,* 452 B.R. 687, 695 (Bankr. N. D. Ill. 2011).

Susan filed a proof of claim on February 24, 2012 in the amount of $23,313.18 and claimed that the basis of the claim was a "domestic support obligation".   A "domestic support obligation" is a debt that is owed to a former spouse that is in the nature of alimony, maintenance or support.  11 U.S.C. §101(14A).  Such obligations generally are intended to honor a spouse's duty of support to a former spouse that does not work outside the home or to a dependent child.  Nothing in the record indicates that

3

Susan's filed claim is in the nature of a "domestic support obligation".  True, the Settlement Agreement provided that Ian was to pay Susan $2,000 a month, but even if this obligation could be interpreted as a debt for alimony, maintenance or support, it is undisputed that Ian is current on these payments.  The amounts that are contested deal exclusively with the division of property and corresponding property obligations under the Settlement Agreement.  They are not in the nature of "domestic support obligations" and thus are not entitled to first-tier payment priority that domestic support obligations enjoy under §507(a)(1)(A). [1]

The Court now turns to the actual amounts contained in Susan's proof of claim.  "Attachment A" of Susan's claim sets forth a breakdown of her claim which is based on three paragraphs of the Settlement Agreement.  First, it provides that Susan spent $13,580.74 for house repairs, maintenance and insurance payments related to the marital residence located at Sycamore Ridge in Avon, Indiana, pursuant to Paragraph 4(a) of the Settlement Agreement.  The only evidence presented at trial was that Susan paid a total of $2,211.75 for Sycamore Ridge-related expenses of insurance premiums and pool maintenance.  Thus, Susan will be allowed $2,211.75 for these expenses.  She has not carried her burden of proving the other expenses associated with the Sycamore Ridge home and therefore, those sums will be disallowed.

Second, the claim provides that Susan spent a total of $4,599.59 in attorney fees for a Florida real estate attorney hired "to facilitate the sale and bank release", for fees

---

[1] The confirmed plan provided that Susan's claim was an unsecured claim "from a property settlement".  Susan did not object to that plan. The parties have not raised, and the Court will not decide, whether Susan is barred under §1141(a) from asserting a claim that differs in treatment from her claim as provided for under the confirmed plan.

incurred in sending documents to the Florida real estate attorney and for two trips to Florida to close on the sale of the Condo, all recoverable under Paragraph 4(b) of the Settlement Agreement.

Paragraph 4(b) of the Settlement Agreement provided that, with respect to the Condo, Ian was to pay "the expenses associated with the condominium pending sale including the monthly mortgage payments to Busey Bank and Monroe Bank...taxes, insurance, association fees, assessments or other expenses associated therewith". Susan offered no proof that the sums paid to the Florida real estate attorney were "associated" with the expenses Ian was obligated to pay, but allegedly failed to pay, under Paragraph 4(b). Nothing suggests that Susan had to "pony up" any of the expenses Ian was required to pay under Paragraph 4(b) and that the attorney fees or other expenses she claims under this paragraph were a direct extension of those expenditures. Thus, none of the $4,599.59 of the expenses will be allowed as the Court finds that they are not recoverable under Paragraph 4(b) of the Settlement Agreement.

Finally, Susan claims that she incurred $5,232.77 in legal expenses for pre petition advice and counseling from David Gray ($3,187.28); "Erik Hebenstreit"[2] ($1040.49); George Donaldson ($960.00) and Phil Borders ($45.00) pursuant to Paragraph 15 of the Settlement Agreement. Paragraph 15 provided that

> Each of the parties agrees that in undertaking to pay certain obligations contained herein, that the said parties shall fully defend and hold the other party harmless for principal, interest, court costs and reasonable attorney fees, together with any judgment rendered against the innocent party by virtue of the party obligated to pay failing to fulfill that obligation and an action being brought against the

---

[2] It was clarified in the January 22nd hearing that this attorney, in fact, was Eric Engebretson of the law firm of Whitham, Hebenstreit & Zubek, LLP.

5

innocent party.

The fees that are contemplated to be allowed under Paragraph 15 are those attorney fees that are incurred to recover sums paid by either Susan or Ian which otherwise were to have been paid by the other under the Settlement Agreement.  For example, had Susan paid the Busey Bank and Monroe Bank mortgages during the pendency of the sale of the Condo because Ian failed to do so as provided for in Paragraph 4(b), her attorney fees incurred in recovering those sums would be reimbursable under Paragraph 15.  Neither the fees quantified pre nor post petition paid to David Gray and the Hebenstreit firm fall under the reimbursable expenses contemplated by Paragraph 15 and thus they will not be allowed.  Susan offered no proof of expenses paid to George Donaldson or Phil Borders and therefore those sums will be disallowed.

Accordingly, the Court finds that Susan sustained her burden of proof only with respect to the expenses related to the Sycamore Ridge marital residence and that Claim #13 filed by her shall be allowed as a general unsecured claim in the amount of $2,211.75.

All of Susan's claims arise from the pre petition Settlement Agreement. The two matters scheduled to be heard on January 22nd were the Debtor's objection to Susan's proof of claim and Susan's Administrative Claim Application. Susan's claim involved only those amounts owed to her by Ian under the Settlement Agreement that were quantified pre petition.  Susan's Administrative Claim Application involved those amounts owed to Susan under the Settlement Agreement that could not be quantified until after the post petition closing of the sale on the Condo.  Susan argued that these amounts were entitled to administrative priority but the Court has denied that request.  What the parties

6

did not file was an action to determine all the amounts – whether quantified pre or post petition – owed to Susan under the Settlement Agreement, but the issue was impliedly tried by the parties.

Thus, in order to determine all of the amounts due to Susan under the Settlement Agreement, the Court, after the January 22nd hearing, asked the parties to supplement the record with specific information set forth in its February 1, 2013 "Order Directing Parties to Provide Clarification And/Or Additional Information".  In so doing, the Court's goal was to have the information it needed to determine the Condo Expenses that Ian was required to pay under Paragraph 4(b) but failed to pay which in turned affected the amount of the short sale and the tax consequences realized by Susan.  It is those amounts to which the Court now turns.

The Court finds that the legal fees for Avery & Cheerva ($297.00) and the veterinary expenses ($500.58) are either expenses Ian does not dispute or was required to pay under Paragraphs 15 and 4(d) of the Settlement Agreement, and thus, they will be allowed.

Susan also presented evidence that, for tax year 2011, she paid $45,486 in federal taxes and $12,013 in state taxes for a total of $57,499.  Had there been no cancellation of debt caused by the short sale of the Condo, her 2011 federal and state tax liability would have been $1,311 and $1,721 respectively, which amounts to $3,032.00.  Thus, Susan paid $54,467 more in 2011 taxes on account of the short sale. Susan also presented evidence that she withdrew funds from her 401(k) account to pay this tax liability and incurred a 10% penalty amounting to $5,599.13.   The Court finds that these amounts were incurred as a result of Ian's failure to pay his obligations under

7

the Settlement Agreement and therefore, they should be included in Susan's claim.

The parties stipulated that Busey Bank paid real estate taxes for the tax years 2006, 2007 and 2008 in the total amount of $32,883.29 and that it paid real estate taxes for 2009 and 2010 in the total amount of $16,462.61. The stipulation recites that the combined total of real estate taxes advanced by Busey is $45,345.90, but the two sums actually add up to $49,345.90 (the "Property Taxes"). However, the Property Taxes that Ian failed to pay pursuant to paragraph 4(b) of the Settlement Agreement were rolled into the Busey Bank mortgage, thus resulting in a greater indebtedness to the bank and a wider margin by which the short sale was "short". However, the "short" sale resulted in Busey cancelling whatever remaining debt was owed to it by Ian and Susan. Thus, Busey Bank will not seek reimbursement of the Property Taxes from Susan. The task here is to quantify all sums for which Susan is responsible to pay as a result of Ian's failure to fulfill his payment obligations under the Settlement Agreement. The Property Taxes will not be included in Susan's claim.

The Court, therefore, finds that the debt owed to Susan under the Settlement Agreement that could not be quantified until after the sale of the Condo amounts to $60,863.71 [3]. Debtor's counsel's argument at the hearings referred to a 60/40 allocation of loss between Ian and Susan respectively, thus implying that Ian's liability would amount to 60% of the claims which arose because of Ian's failure to pay the obligations set forth in paragraph 4(b). Paragraph 4(b) contemplates a Condo sale that brings a

---

[3]  
| Avery & Cheerva, LLP: | $297.00 |
|---|---|
| Vet expenses: | $500.58 |
| Income tax: | $54,467.00 |
| 10% penalty | $5,599.13 |
| | **$60,863.71** |

8

price less than what is owed on both the Busey Bank and Monroe County mortgages, but it does not contemplate a "short sale" of the Condo where the banks *accept* less than what they are owed and forgives the remainder of the debt. Paragraph 4(b), rather, contemplates that both banks would be paid in full, either entirely by condo sale proceeds alone (if sufficient) or by condo sale proceeds along with Ian and Susan's 60/40 allocation to supplement the condo sale proceeds. Nor does paragraph 4(b) provide that Susan is obligated to pay 40% of the Condo Expenses if Ian fails to pay them; payment of the Condo Expenses is Ian's responsibility exclusively. So, the Court is convinced that *no* allocation is required under the circumstances here. Thus, the Court finds that the sum of $60,863.71, along with $2,211.75 for expenses related to the Sycamore Ridge residence represents Ian's liability to Susan under the Settlement Agreement. [4]

### # # #

Distribution:
David R. Krebs, Attorney for the Debtor
Daniel A. Tucker, Attorney for Susan Burns

---

[4] This sum does not include the uncontested $2,000 payment Ian was required to make under Paragraph 12 of the Settlement Agreement.