SO ORDERED: March 29, 2013.



_____
**Robyn L. Moberly
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| IAN JOHNSTON ) | CASE NO. 11-3242-RLM-11 |
| ) | |
| Debtor ) | |

**ORDER DENYING SUSAN BURNS' APPLICATION FOR AUTHORITY FOR REIMBURSEMENT OF ADMINISTRATIVE EXPENSE**

This matter came before the Court on January 22, 2013 and again on March 13, 2013 upon the Application for Authority for Reimbursement of Administrative Expenses (the "Application") filed by creditor Susan Burns ("Susan"), the former spouse of the Debtor. For the reasons below the Court DENIES the Application.

*Background*

Susan and the Debtor, Ian Johnston ("Ian"), were married in 1999. They separated in 2006 and their divorce was final in 2007. At the time of the divorce, Susan and Ian owned a condominium located in Fort Myers Beach, Florida (the "Condo").

Paragraph 4(b) of the marital settlement agreement approved on September 6, 2007 (the "Settlement Agreement") provided in part that the Condo was to be listed for sale and sold in a commercially reasonable manner. Ian was to pay the Condo expenses pending sale, including the monthly mortgage payments to Busey Bank and Monroe Bank, taxes, insurance, association fees, assessments or other such Condo expenses (the "Condo Expenses").  Susan was to receive 60% and the Debtor was to receive 40% of any sale proceeds remaining after satisfaction of the Busey Bank and Monroe Bank mortgages (the "Mortgages").  If the sale proceeds were not sufficient to pay the Mortgages, 40% of the balance due on the Mortgages would be paid by Susan and 60% would be paid by Ian.

Paragraph 7 of the Settlement Agreement provided that Susan and Ian were to maintain their individual retirement accounts and pension plans except that Susan was to transfer to Ian $100,000 from her AXA Equitable account and that Ian was to pay any fee she incurred as a result of the transfer.  The provision that required Susan to transfer $100,000 was later deleted by agreed modification of the Settlement Agreement on January 29, 2008, with no explanation, and therefore Susan was not required to transfer those funds.  Paragraph 12 of the Settlement Agreement provided that Ian, beginning March 1, 2008, was to pay Susan $2,000 a month for sixty (60) months. There is no dispute that Ian is current on these monthly payments.

Ian filed his chapter 11 case on March 23, 2011.   The Condo sold in July, 2011 for $480,000 which did not cover the balances due on the Mortgages.  Ian's chapter 11 plan was confirmed on March 8, 2012.  The plan classified administrative claims under §503(b) as Class 1 claims but Susan's claim was not included in that Class.  Rather,

2

the plan classified Susan's claim in Class 8 as an unsecured claim for a debt arising out of the Settlement Agreement and provided that it be paid as provided for in the Settlement Agreement. Susan did not object to confirmation of the plan.

The Application asserts that Susan incurred $91,667.30 in expenses with respect to the Condo which she alleges resulted in satisfaction of claims and an improvement of Ian's financial position such that those expenses should be afforded priority status under 11 U.S.C. §503.

## *Discussion*

11 U.S.C. §507 governs the priority and order in which claims and expenses in bankruptcy cases are paid. Of the ten (10) tiers of priority set forth in that section, claims that qualify for administrative status under 11 U.S.C. §503(b) are given the relatively high priority of second tier. The only claims entitled to higher priority are those that are "domestic support obligations" and there are no such claims in this case. Thus, §503(b) claims in this case get top billing.

Given an administrative claim's favorable position within the payment scheme and the limited resources of a chapter 11 debtor, §503(b) administrative claims are strictly construed. *In re National Steel Corp.*, 316 B.R. 287, 299 (Bankr. N. D. Ill. 2004); *In re Sentinel Management*, 404 B.R. 488, 493 (Bankr. N. D. Ill. 2009). The moving party bears the burden of proving by a preponderance of the evidence that its claim is entitled to administrative expense priority. *National Steel*, 316 B.R. at 300.

The only two possible provisions – both subsections under §503(b)– under which Susan may have an administrative claim under the circumstances here are §503(b)(1)(A) and §503(b)(3)(D). Section 503(b)(1)(A) provides that claims for "the

3

actual, necessary costs and expenses of preserving the estate..." are entitled to administrative priority.  To be afforded §503(b)(1)(A) status, claims must meet two criteria, the first of which is that the claim must arise from a transaction with the debtor-in-possession or the debtor must have induced the creditor's performance.  *In re Jartran*, Inc., 732 F.2d 584, 587-588 (7th Cir. 1984; ); *Bertram Communications, LLC v. Netwurx*, Inc., 433 B.R. 719, 724 (E. D. Wis. 2010).  If the transaction that gives rise to the claim was entered into with the pre petition debtor(and not the post petition debtor in possession), the claim is not an administrative claim, even if payment of it becomes due post petition. *National Steel*, 316 B.R. at 300.  With regard to the second criteria, the expense for which administrative status is sought must benefit the estate as a whole. *In re Jartran*, 886 F.2d 859, 871, (7th Cir. 1989) *("Jartran II")*.  The benchmark for this criteria is actual value received by the estate and not the cost incurred by the creditor. Expenses incurred by a creditor acting in its own interest do not qualify.  *National Steel*, 316 B.R at 300.

      The expenses that Susan claims are entitled to administrative priority are Condo expenses, taxes incurred as a result of cancellation of debt as a result of the short sale on the Condo, and legal fees Susan incurred in representation of her interests in the divorce, Ian's chapter 11 case, and the sale of the Condo.  These expenses either are the Condo Expenses referred to in paragraph 4(b) of the Settlement Agreement or are legal fees that Susan incurred in protecting her interests under that agreement. Thus, the expenses to which Susan asserts administrative status arise from the Settlement Agreement which was entered into pre petition.  This agreement was between Susan

4

and Ian, the pre petition debtor, not Ian in his capacity as the post petition debtor in possession. [1]

Furthermore, there is no evidence whatsoever that the expenses incurred by Susan benefitted the estate as a whole. Susan claims that, because of her efforts, the claims of Busey Bank and Monroe Bank as wells as Condo property taxes and association fees have been satisfied. The satisfaction of these obligations was a natural consequence of the Settlement Agreement which called for the Condo to be sold. Furthermore, even though the claims related to the Condo are satisfied, there was no net benefit for the estate because the Condo is no longer property of the estate. Busey Bank moved for on May 5, 2011 and obtained on June 2, 2011 relief from stay to proceed with its foreclosure action on the Condo and abandonment of the Condo from the estate. This is not the case where Susan post petition expended funds to allow the Condo to remain property of the estate and appreciate in value, thereby fetching a higher sales price which inured to the benefit of the unsecured creditors of the estate. Certainly, the legal fees she incurred with respect to the Condo and in protection of her interests within the bankruptcy, while beneficial to her, have absolutely no benefit to the estate as a whole. The Court finds that Susan has not met her burden of proof and thus, is not entitled to an administrative claim under §503(b)(1)(A).

11 U.S.C. §503(b)(3)(D) provides in part that an administrative claim shall be allowed to "a creditor...in making a substantial contribution in a case under ...chapter 11

---

[1] Upon the filing of a chapter 11 case, an individual chapter 11 debtor wears two hats, that of "debtor" in his personal capacity, and "debtor in possession" which acts as fiduciary of the bankruptcy estate. *In re Hoang*, 449 B.R. 850, 856 (Bankr. D. Md. 2011).

5

of this title". Like §503(b)(1)(A), a creditor must prove its entitlement to administrative status under this section by a preponderance of the evidence and allowance of such a claim is left to the court's discretion. *Sentinel Management*, 404 B.R. at 494. The Code does not define "substantial contribution", but it has been given a narrow application as "[t]he integrity of §503(b) can only be maintained by strictly limiting compensation to extraordinary creditor actions which lead directly to significant and tangible benefits to the creditors, debtor or the estate". *Id*, quoting *In re D.W.G.K. Rests, Inc.*, 84 B.R. 684, 690 (Bankr. S. D. Cal. 1988). At the very least, for a creditor to have been found to have made a "substantial contribution", it must show that it made an actual and demonstrable benefit to the debtor's estate, and to the extent relevant, the debtor's shareholders". *Sentinel Management*, 404 B.R. at 494, quoting *In re United States Lines, Inc.*, 103 B.R. 427, 429 (Bankr. S. D. N. Y. 1989). The activities of a creditor protecting its own interests which result in an incidental benefit to the estate do not suffice. *Id*.

Here, there has been no showing that Susan made a substantial contribution to the estate. The expenses for which she seeks administrative priority were incurred as a result of Susan protecting her interests. For the same reasons these expenses were not entitled to administrative priority under §503(b)(1)(A), they are not entitled to administrative priority under §503(b)(3)(D).

Accordingly, Susan's Application for Authority for Reimbursement of Administrative Expenses is DENIED.

### # # #

Distribution:
David R. Krebs, Attorney for the Debtor
Daniel A. Tucker, Attorney for Susan Burns